Thank you. Edward Silverman on behalf of the appellant Alejandro Diaz-Barba. With the court's permission, I'd like to speak approximately 13 minutes. My colleague, Mr. Gaston, approximately two and five minutes for rebuttal, at which time I will add my remarks in the cross- As to her? Yes, sir. Yes, sir. All right. I apologize for bringing up the last argument, but I misspoke, and it can save me the time in the court, the time of receiving a letter, the standard of review on the international comedy is de novo, because it was brought up in a rule 12B6 motion to dismiss. So it's reviewed for the same standard of review. Well, you're kind of using your time for the wrong reason here. You better get to this issue. Very well. I mean, I appreciate it. Now I gotta let him have some time to stand up and talk about that? It came up in my rebuttal, your honor. I understand. Thank you. I'm just saying. I understand. Come on. The principal argument, two principal arguments, both that the court lacked jurisdiction to amend the ACJ, and that the ACJ was not definite and specific enough. With regard to the first issue, while the ACJ was on appeal, that ACJ directed performance or creation of beneficial interest for the benefit of Kismet, the court, if you will, in Suespante, at a hearing on November 13th, realized the problems associated with obtaining a permit in Mexico, because the beneficial interest was being transferred to a US entity. And ordered instead that the performance be to a Mexican entity, not before the court. What's particularly upsetting about this is the court stated why. On the record, strips of record 859, the court did this to, quote, sidestep the permit requirement, close quote, in Mexico. The court did not have jurisdiction to do that, and that order must be reversed and all orders flowing from that. With regard to the specificity or definiteness of the ACJ, under the Philadelphia Marine case, the Supreme Court has taught us that in order for someone to be held in contempt, the order must be specific and definite. In that case, the trial court had ordered the defendant to comply with an order upholding the employer's interpretation of a collective bargaining agreement. The trial court found the defendant in contempt, and the Supreme Court reversed. The court ruled that that judgment was not specific enough, where it merely asserts a conclusion, as opposed to the operative command. Here, the ACJ only describes the desired result and not how to achieve it. And we know that for no other reason than the number of hearings, the number of reporter's transcripts, and the arguments and fights about what could and could not be done. In particular, the court ordered Alex and Martha to, quote, undo the avoided transfer, close quote. In the 544 claim, the avoided transfer was from Eisenhower, the debtor, to H&G, a party whose default was entered. How can Alex and Martha undo that transaction? The next order was to take, quote, all actions necessary to cause the property to be reconveyed to a Fideicomiso trust, naming Kismet as the beneficiary. It does not tell Alex and Martha how to effect that. Alex and Martha go to their Mexican counsel. Alex and Martha go to the Ministry of Foreign Affairs, and they are told consistently, a permit needs to be issued for Kismet, number one. And number two, if this is being done pursuant to an order of a court, a foreign court, you must homologate it in proceedings in Mexico. When those issues were brought to the court's attention, all the court says is, let's sidestep the permit requirement and you can perform to aximo, a party not before the court. On November 3rd, Martha brought these concerns to the court's attention, those two specific concerns, at which hearing. Let me just, I don't understand why you're raising this point about the judgment being amended to specify performance to a different party. Okay, well, it's certainly definite enough at that point. Sign the documents. If you think that was illegitimate, you can raise that on appeal. But how is that a defense against a contempt suit? Because Axolotl is a Mexican entity, and a Fideicomiso trust is a procedure under Mexican law, whereby a foreign entity is to take the beneficial interest in a property. There are no procedures, there's no rules, there's no requirements. They did not know what to do. So all I'm saying to you is from the bankruptcy court standpoint, the judge says, okay, look, you have all these issues that you're raising about how this is not eventually going to work under Mexican law. I'm not concerned with that. I'm just ordering you to do the only thing that I can, I have jurisdiction to tell you to do, which is to sign these documents. After that, it's Kismet's problem. If they want to come back, maybe I'll order some alternative remedy. What are these documents? It started out with a general power of attorney. Alex and Martha give Kismet's counsel a general power of attorney to do whatever they want, including clear out their bank accounts worldwide. That's certainly not appropriate. That's not what the ACJ ordered. Likewise, when it orders to transfer the beneficial interest to a Mexican entity, what is the procedure? Again, is it up to Kismet or their counsel to put together any documentation, and Alex and Martha should blindly sign it? Well, the trouble is, and I, frankly, I'm happy with my colleague's question, because I was about to stop you with the same. I have Hoffman versus Beer Drivers and Salesmen Local Union, which says that the bankruptcy court has the authority to enforce its judgment and supervise the conduct mandated therein. And all you're saying to me is that this is over and above that kind of conduct. And when it's so easy to have done what needed to be done in that particular matter, just sign the documents, what happens thereafter? I mean, Kismet can't do something too bad for them. But what are the documents? And that's the problem. When faced with that question, the trial court, excerpts of record 1083 says, well, I assumed it was a self-settled trust. The kind where you go back to the lawyer's office, he sets up a trust, you sign the documents, and it's done. That's not an acceptable procedure under anyone's terms. Did anyone ask what the documents were? I'm sorry? Did anyone ask what the documents were? Did anyone try to dispute that? No. All the bankruptcy court was trying to do was enforce its judgment. Have them sign documents which would allow it to be enforced. It would allow it to enforce its judgment and supervise the conduct mandated therein. Alex and Martha did sign documents, and they were lodged with the bankruptcy court under a caption, I believe, Notice of Satisfaction of Judgment. Kismet didn't want that, didn't like it. They objected. So they did do that. They did attempt. They did sign a theoretical miso transferring the beneficial interest to Kismet. The court didn't accept it. Again, what is specific and definite in the judgment? What should they do? It doesn't say sign whatever Kismet comes up with, because what Kismet came up with the first time is a general power of attorney. Given this somewhat unique situation, the court was obligated to give more definite and specific instruction than accomplish this result. Are you really appealing here the contempt itself, or are you appealing the attorney's fees? The attorney's fees, Your Honor, have been vacated. We're appealing the contempt. Only? Yes, the fees have been vacated. Well, I know they've been vacated. And that's what I'm after, because it was remanded so they could have an appropriate opportunity to file an objection to the reasonableness of the fees, right? Correct. That's not before the court. Again, I'm saying to myself, if those fees have not even been determined, and we're here, why is it I should do this piecemeal? Because that's the law of the Ninth Circuit. That's been briefed a number of times, both for the commissioner and the motions panel. And the motions panel concluded under the Ninth Circuit law, which admittedly is different than other circuits, but under the Ninth Circuit law, where this is a controlling issue of law, this court does have jurisdiction to take this interlocutory appeal. So you think this... Well, again, I'm trying to make sure that we have jurisdiction to do what we need to do here. And that's why I'm asking you the question. I understand. I can't do it if I don't have any jurisdiction. Of course. I have to bring that out first. Of course. And that can be raised at any time. In that regard, we rely on the briefing that was before both the appellate commissioner as well as the motions panel that denied Kismet's motion to dismiss for lack of jurisdiction. The next issue related to the ACJ, and it's somewhat related to the first appeal that was with the ACJ as the court wanted it done without violating Mexican law. Mexico requires a permit in order to transfer the property. And it's up to Kismet to get the permit. It is... Alex and Martha can't go to the Ministry of Foreign Affairs and say, please issue a permit for Kismet. And that's not what the bankruptcy court ordered them to do. The bankruptcy court ordered them to set up a Tire Comiso Trust. And if they signed whatever documents were necessary to effectuate that transfer, if Kismet couldn't get the requisite permit, the bankruptcy court said, that's Kismet's problem. I'll deal with that later. Okay. Then let's go to the second point. And that is that it required them to sign a document under penalty of perjury, stating that the transfer was voluntary. Alex and Martha received a response from the Ministry of Foreign Affairs stating that that would be a void transaction. So why should they do that? But more importantly, it was likely in violation of... It was possible criminal liability was the language. So there's the violation of law. They had to, and in fact, did ultimately sign a document containing perjury. They swore under penalty of perjury that this is a voluntary transfer. Mexico has a procedure. In that instance, the United States judgment could have and should have been homologated. And then that requirement is taken care of. It doesn't have to be voluntary if it's ordered by the court in Mexico. And that's the problem. That's why the ACJ required them to violate the law, which the threat of sanctions and incarceration, they ultimately did. So we hear from Kismet regularly that, well, they did sign it, so obviously it could be done. Well, they had to violate the law of their country, and they'll have to face the consequences there. That's not the purpose of the bankruptcy laws and the judgment the court in this case issued. Under U.S. v. Rylander, he has met his burden by raising an issue of fact. It's a fairly low standard. Raised an issue of fact regarding the inability to comply without violating the law. The court erred in finding the contempt in order of the sanctions. The next issue I'd like to talk about is the court's order abrogating Alex's, and I believe my colleague will speak to Martha's, attorney-client privilege. When the court ruled that Alex and Martha waived the attorney-client privilege, on the record, the court was very specific, and that's Excerpt to Record 1183. The waiver was limited to communications regarding the defense of impossibility, a violation of Mexican law. But when Kismet prepared the order and submitted it to the court, there was no such limitation. It was a complete waiver of all attorney-client communications from day one to the date of the order. Alex and Martha got it together the same day that was lodged to file an objection, and the court did not sustain it and signed the order to submit it. So it started out as a fairly limited waiver, as any waiver is supposed to be, ended up being, we want to see everything. Backing up a bit, the basis of the court's ruling on the abrogation of the privilege was the crime-fraud exception. A moving party like Kismet is required to show under such circumstances both that the parties engaging in a crime were a fraud and that the attorney-client communications were in furtherance of the fraud. Very simply, there was no such showing. A crime-fraud exception is mentioned in a footnote in the moving papers with no discussion of case law or the facts. And looking at my time, I would like to let my colleague speak and reserve the rest of my time for rebuttal. Thank you. I will go quickly, and on the last topic that Mr. Silberman spoke, part of the basis for the waiver of my client Martha's attorney-client privilege, the court referred to a declaration that I had done and specifically stated that I had given Alex advice in that declaration. I did not. I think the document speaks for itself. There is nothing in that declaration that says or indicates that I had spoken to Alex directly at all, and in fact, I don't believe that I had even met the gentleman at that point. So that ends my remarks on that. Okay. Thank you. I guess we're ready for you, Counselor. Thank you, Your Honors. I would like to reserve three minutes in rebuttal in connection with the cross-appeal if I may. Sure. Janet Gertz on behalf of Kismet Acquisition, LLC, Appellee and Cross-Appellant. Your Honors, the heart of this appeal can essentially be summed up by the findings of the bankruptcy case. which it made at the November 13, 2008, contempt hearing, where it found by clear and convincing evidence that the Diaz's, quote, were intent on doing anything possible to avoid complying with the judgment and were actively taking steps to make the performance of the judgment an impossibility. I would like to submit that this is an extremely sad record that's before this court in respect to the acts and occurrences that happened following the issues of a valid court judgment issued by the Bankruptcy Court. Factually speaking, alluding to Judge Watford's comments, the transfer actually could have been accomplished very quickly and very easily if the defendants would simply have signed the power of attorney that they were presented on September 4, 2008. Now, counsel has alluded to the fact that they were concerned that it would have been a general power of attorney. I'm actually looking at the record on appeal, record on appeal 89, which is a letter that was in response to the power of attorney that was issued by Ms. Valdez from the Procopio firm. There's nothing in this letter that complains about that power of attorney being a general power of attorney. They were concerned about it, about the conveyance of the property to any assignee of Kismet Acquisition, LLC. That was a red herring from the beginning. It's a red herring now. Assignments of judgments are embedded in the law. The transfer documents that were on the docket and were publicly available to the bankruptcy court order approving the transfer of the assets of state to the Kismet Acquisition, LLC entity were embedded in that order and the agreement were freely assignable. So that was not a valid type of a complaint. And in fact, the documents that were produced and were before the bankruptcy court showed that the determination that they made of objecting on the basis of Axelotl taking that transfer was not, because really they were concerned about the judgment being assigned. Their real reason was that their Mexican attorneys were telling them that if that property is transferred to Axelotl, then there won't be the requirement for a permit. And as a result, it would be too easy to perform the judgment. So the heart of this appeal has to go to the starting point for finding the contempt. And that is the fact, when you look at the burden of proof, the moving party has the burden of showing by clear and convincing evidence that the contenders violated a specific indefinite order of the court, setting aside the specificity for one moment. Once that is demonstrated and the moving party meets that standard, the burden shifts. And it shifts to the defendants. And the defendants then have this very, very high burden to meet of showing that they took every reasonable act within their power to comply. The record here is shocking in that as the district court remarked, there is truly not a scintilla of evidence that these defendants took any acts at all to comply with this judgment. That should really be the end of the issue. Well, their argument is that Mexican law rendered compliance with it impossible. That's their argument. That is their argument. So I would urge you to respond to that. Yes, Your Honor. The impossibility of defense, however, is not even available in the first instance to a defendant that doesn't first make the showing that they did everything in their power to comply. There was no showing in this respect. The record is absent any evidence that they took any efforts. As a result, the impossibility of defense is, it eludes them. They can't claim it. So starting first with the question of the clarity of the order, for them to say that the bankruptcy court's order was too ambiguous and that how were they supposed to know how they were supposed to make this transfer, it doesn't ring true. And the reason it doesn't ring true is because they were not coming to this in a vacuum. They were asked to undo something they had already done. So reason speaks. If you've done something, you know how to connect the dots to undo it because you were the one that originally got it there to begin with. Secondly, the transfer documents that were used by Kismet as a draft merely replicated the earlier transfers that had been used for this property historically, starting with the Lonnie Trust. So these were not coming from a vacuum either. There was a clear path. In fact, had the bankruptcy court added more specificity to the order other than just undo what you have done, I would argue that that would actually have rendered the order more difficult to understand. And again, had the defendants simply allowed Kismet to have that power of attorney, they could have washed their hands with it. They could have said, we do what you're asking us to do. Here is a power of attorney. If they thought it was too broad, they should have asked us to limit it. We would have been happy to do that. But I would argue that it was a specific power of attorney. But they didn't do that. Instead, they spent all of the time and effort racking up all of these attorney's fees that resulted from their constant efforts to try to defeat the performance both in the United States and in Mexico. And as was alluded to in the merits argument, the question of Mexican law and whether this offended Mexican law, that's really a question of comedy. And the district court indicated that the standard for comedy was fully met under all of the elements that the bankruptcy court looked at. If the district court looked at it again. But just as a matter of common sense, what they're essentially saying is that if a judge, whether it be in Mexico or in the United States, tells anyone to take a specific act, that it's violence. Because this party is being compelled. What about their argument, though, that they were being ordered to do something that subjected them to criminal liability in their home country? That's a question of Mexican law that is not in the record. There is no proof of that. That's simply a baseless assertion. And as I say, it doesn't make any sense. Because what they're essentially saying is that any order by any official, whether it be a judicial official or a government official, that tells a party to take a specific act in connection with transferring property is violence. That makes no sense. Well, are you saying violence or voluntary? Well, they're saying that if it's involuntary, that it's violence under Mexican law. But it is not. I'm just saying violence or violates. I can't. Well, violence. They called it violence. I don't care about what they called it. I'm just saying. Yes. Their argument right now is that I was going to have to sign something under penalty of perjury saying that this was a voluntary transfer, which I was being advised by my Mexican counsel, I could be prosecuted, potentially. The problem with that argument is that what the transfer documents actually said was that the transfer was being made pursuant to the order of the bankruptcy court. And essentially, so what they were being asked to testify to, essentially, is that a court has ordered me to do this, which was true. There was no falsehood in that. And again, it comes back to the principle that judicial authority anywhere in Mexico or the United States should be able to compel compliance with their lawful rights. But again, bring it back to the standard. They took no ax whatsoever. If in fact there truly was such an impediment, there is no record anywhere that they attempted, whether in Mexico or in the United States, to try to get around that perceived impediment. So again, they can't claim that so-called impossibility defense based on that. Go ahead. What do you think they were supposed to do in Mexico to resolve this particular issue? I think that, as you pointed out earlier, sign the transfer documents. And if there is an issue with respect to Mexican law, after the transfer, after they have complied. I'm talking about the penalty of perjury part. That's not a very helpful suggestion to them. Sign the documents and then pray that you don't get prosecuted. It assumes that there was perjury, however. And what the order actually said was that they were doing it pursuant to a court order, which was true. There was no perjury. I thought that, so maybe tell me what I need to look at. I thought it said they were, this was a voluntary act on their part. Initially, one of the drafts, I believe, did indicate voluntary. The document that they signed indicated that it was being done pursuant to a court order. So it got modified in response to their objection on that front? Is that what you're saying? Indeed. Indeed. However, this could have been eliminated had they signed that original power of attorney and allowed Kismet to pursue the transfer themselves, because then they would not have even been put in the position of having to sign the documents themselves. Do we have in this record that document, because I don't remember reading it, that they signed that you're now referring to? The transfer instrument that they signed, it should be in the record, and I will have my colleague try to locate it for me. Okay, because I don't remember seeing that. I haven't seen that either. Go ahead. Going on to the question of the attorney-client privilege. That's the next one I was going to ask you about, so go ahead. The waiver of the attorney-client privilege is an issue of law. Of course, it is reviewed de novo. Initially, there are two specific grounds that I think are more important for this appeal, and that's the at-issue waiver and the crime-fraud exception. As to the at-issue waiver, I think there's no question that the compliance and the advice of the Mexican counsel as well as U.S. counsel was key to the question as to whether or not the compliance with the bankruptcy court's order would violate Mexican law. In this respect, I believe that the Vertex case that we cited is particularly key because what that indicates is that the question of contempt and the defense of contempt and impossibility requires the court to look at whether there was a good-faith, reasonable interpretation of law on which their assertion of impossibility was grounded. This required the investigation into Mr. Diaz's and Ms. Barb's subjective beliefs as influenced by the advice of their counsel. In connection with the crime-fraud exception, I believe that the Napster case is key on this, and that is the fact that where the client seeks the advice of counsel to further a crime or fraud and the communications are sufficiently related, that this particular exception to the attorney-client privilege can be found. What about the waiver exception? Where it has been waived. In connection with the crime-fraud exception. Well, I believe actually that the case law sets it up as more of an exception in the beginning rather than a waiver. The burden that the proponent of the exception of the waiver needs to demonstrate is that they need to make a prima facie showing of the crime or fraud. Now, what I believe the defendants would like to suggest, this is a very, very difficult and high burden. In fact, both the Third Circuit and the Federal Circuit have recently said that it is not a particularly heavy burden. It's not equivalent to supporting a jury verdict beyond a reasonable doubt. And in this respect, it's actually fascinating because where privileges need to be looked at under Rule 501, under reason and experience, actually, this exception to the attorney-client privilege is very old, and it goes back to Clark, the United States, a 1933 Supreme Court decision which itself referenced English common law from the 1880s. Here's what the Supreme Court said. To drive the privilege away, there must be something to give color to the charge. There must be prima facie evidence that it has some foundation, in fact. When that evidence is supplied, the seal of secrecy is broken. Here, the defendants fail to comply. They fail to draft any transfer instrument. There was a narrative that had been issued in Mexico criticizing the bankruptcy court, which evidenced their intent. And in addition, they had, there was evidence in the record that they had filed the amparo with the assistance of counsel, which was to defeat the performance of the judgment. So do you think this, and I understand what evidence you're going to say, what standard or review do you think it met? I mean, there was a very, that's a very high standard as I have, as I have thought about this particular thing, and I'm wondering if it meets that high standard. The standard for meeting the prima facie test? Yes. I believe it does, and I believe it does under Micron Technology v. Rambis, 645 Fed 3rd, 1311, as well as Inouye Grand Jury Investigation, 445 Fed 3rd, 266, both cases which indicate. But this is just a little bit different than those, don't you think? In respect to the fact that you're questioning the fact that there was no in-camera review, is that the particular issue? That's right. In this respect, I don't believe an in-camera review was necessary. I believe that the bankruptcy court, particularly with respect to the evidence of the amparo filings and the, also the fact that it arose out of a contempt proceeding, which is the violation of a lawful, of the failure to perform a lawful court order. Those two combined to show that there was affirmative acts being taken to undermine that order, I believe it does meet the standard under reason and experience, as interpreted by the Supreme Court in Inouye Clark. If I may just briefly go on to the cross appeal, the standard here that the bankruptcy court looked at as far as issuing the, to give the background, it was compulsory sanctions that continued after there was a facial compliance with signing the documents, but there was the concerted effort by the defendants and their affiliated agents to storm the gate and defeat really any benefit from the judgment. The bankruptcy court found that in signing the documents, the defendants had not actually fully complied and had not purged their contempt. Now, the district court looked at it a little bit differently. He looked at it more from the standpoint as the, as one would look at as the scope of an injunction and whether there was notice. I would respectfully say that actually under the standard that's expressed in U.S. v. Tennessee, I think the district court did get this wrong. I think that the failure to purge is clear in the fact of the, we have submitted a CD which shows the closing ceremony. One of the significant aspects of that is the visible intent and obstructionist type of complexion of the defendants. They did not intend to fully conform. They intended to frustrate that judgment. In that respect, I believe that... No, I guess I kind of worry. It seemed to me that the district court was suggesting that these were compulsory sanctions and therefore only proper if the condemnor was afforded the opportunity to avoid the sanctions through prospective compliance. And, Your Honor, I believe that they were able to. Well, I guess they weren't put on notice, were they, until December 4. Yes, they were, Your Honor. In the fact that they knew, they knew by virtue of the fact that they had, they had to do everything in their power to comply and to effectuate that order. It's clear that they did not do that. It is clear that they... But on December 4, they were put on notice that compulsory sanctions would be imposed unless they vacated the villa. That was merely... That's what I understand from the record. That was merely reiterating what already existed. What already existed was that they knew that they had to do everything in their power to comply with the bankruptcy court's order. Undermining that order was... It was pretty specific in December 4 what they had to do. But the Supreme Court in Rylander has indicated that contempt is not to invite disobedience. If one would open up that area in the law, one would essentially invite contenders to say, well, let's see, maybe we can just transfer this property to another third party. That way we can do, we can do facial compliance, but we can really avoid the court's judgment. That is not a policy to put in the law. And I would also reiterate that they were fully on notice that they had to do everything in their power to comply. Doing something to undermine that judgment was not within that scope. I would restate that they did not purge their contempt, and as a result, the sanctions continued to run. Your Honors, I see I have 27 seconds. And just to sum up, I believe that the bankruptcy court's order should be affirmed, and I believe that the district court's affirmance should also be respected with the exception of the reversal of the compulsory sanctions. Thank you. In my rebuttal, I'll try to speak to both our appeal and the cross appeal. Starting first with the cross appeal, I believe counsel has confused compensatory sanctions with compulsory or coercive sanctions. What I heard in this argument and what I read in their brief deals with compensatory sanctions, that the defendants had to do everything within their power to comply. And the court ruled they didn't, and they got sanctioned. That's not this issue. This issue is the court's coercive or compulsory sanctions. The original OSC on coercive or compulsory sanctions, pardon me, required, or gave Diaz, quote, one, Alex and Martha, quote, one week to sign such documents proffered by Kismet or pay $25,000 a day. And that's excerpts of record 859. So that's the original order for which they were held in contempt and fined $25,000 a day. Fast forward to the events counsel described in the closing and not turning over possession. That is a different issue, and the court knew and appreciated that, which is why from the bench on the fourth and in writing on the fifth, the court changed its order and said, you better give up possession or the same sanctions will apply. And they did. And that's the cross appeal. And it should be affirmed. Turning now to our... Well, it seems like that the district court was really concentrating in that particular matter with the fact that the bankruptcy court had said once the deal was done, she said that a number of times. She changed her mind on a lot of things. What I'm dealing with is this particular compulsory sanction issue. And I apologize, but I don't know. Is there a question? No, I just was trying to make sure that you agreed with that. Yes, that there was a different act that they must comply with and they must have been given notice about. Turning now to our appeal, one of counsel's early arguments dealt with assignments. Well, of course, assignments are freely assignable. I have no issue with that. And the documentation giving when Kismet bought the claim from the trustee, apparently it was to Kismet or it's assigned. That's fine. But that does not change a judgment debtor's obligation to comply with the judgment. If there's an assignment, that's between the judgment creditor here, Kismet, and the third party. I guess it's axolotl. It does not change the requirements for the judgment debtor. If that were the case, performance could be on day one and the judgment creditor could say there's a problem. Alex and Martha were told to transfer the beneficial interest to Kismet. Counsel says that Alex and Martha knew exactly what to do. The court here ordered it. And that's in the context of was it voluntary. I understand. Okay. It was not. It was pursuant to court order. What about the documents she refers to? Which ones, Your Honor? Well, she said that about the fraud, the one that you were complaining about on the fraudulent is that they were voluntarily transferring and they knew it would be a lie and all that. She said that document changed and it was by court order that the document they were supposed to sign. Do you agree with that? No. I'm going outside the question. Instead of voluntarily, the document said they signed by court order. So the volunteering would not be. Well, Your Honor asked if that the ultimate document is in the record. It is not. I can go out of the record and tell the court that it does say voluntary. It absolutely does. The document isn't in the record. It is not in the record. As far as I'm aware. No, Your Honor. It is not that I'm aware. Sorry, Judge Watford. No, that's what they've been looking for. Apparently, you're telling them they're not going to find it. I don't think so. I'm not aware of it. And I did check with my colleague. Also, he's not aware of it. Okay. Okay. I appreciate your argument. Thank you very much. You have another, if you want, rebuttal as to the cross-claim only. Thank you, Your Honors. Very briefly, one of the things I believe that's also important in respect to the timing of the violation is that the bankruptcy court's evidentiary hearing was really to look at the matter of when the so-called storming of the gate happened. And it was important to the bankruptcy court to find that the storming of the gate actually happened before the defendants had actually signed those documents. In the fact that it was a continuation of their earlier conduct of contempt. In connection with this, the bankruptcy court expressly found that there had been no purging of the contempt. And that's at the record at 553 to 555. This finding was not reversed by the district court. And I believe that actually there would be hard to find as a matter of fact that there had been a purging of the contempt in the fact that that storming of the gate happened prior to the execution of the instruments. Again, I come back to the standard. The standard is whether the defendants did everything in their power to comply. It's both the starting point and the end point for the analysis, both as to the initial finding of the contempt. So you keep saying that's the test. But what they are saying to us is that the reason they didn't do what they were commanded to do was because it would violate Mexican law. And several times my colleagues have asked me about that question. And I don't know what your answer has been. Well, let me just say, Ashley, thank you, Your Honor, because it's actually important to remember that the defendants are the only ones that are out there saying that this violated Mexican law. We've got three findings. We've got a finding of the bankruptcy court that it did not violate Mexican law. It's what Mexico says about property on the coast. We know, I mean, on its shores, you can't own it and so forth and so on. In fact, their own counsel, Mr. Martin, had written a law review article and had expressly said to the opposite, that in fact, there are provisions whereby U.S. citizens can take a FIDICOMISO interest, and additionally, where there is a Mexican entity that is also a joint partner. So their own counsel has written a law review article, which they were aware of, that it doesn't violate Mexican law. The Brady case, this court has said it doesn't violate Mexican law. Well, he's basically trying to take law review articles as gospel. Gospel, but that hasn't come yet, I don't think. Well, as taking as gospel, the district court, in its denial of the state, ruled that it didn't violate Mexican law. Now, that's law of the case. When I was on the state court, you talked about law review. I had written a law review article criticizing a point. The lawyer was arguing, based on my law review article, now I'm sitting in judgment. He had to take it to another court. He couldn't, I wasn't going to rule based on a law review article, and he was right. I think my partner's right, but eventually he'd repay the law review article. In any event, thank you for your argument. I think you've used your time, extra time, and I'll have some good criticism of me giving you more time than they got, and I don't stop now. So thank you very much. Thank you, Your Honor. Thank you both sides for your argument.
judges: Farris, Smith, Watford